## KOPPEL INDUSTRIAL CAR & EQUIPMENT CO. v. BLAW-KNOX CO.

### No. 5230.

Circuit Court of Appeals, Third Circuit.

Oct. 4, 1934.

Rehearing Denied Dec. 3, 1934.

Findings of fact and the conclusions of law of the District Court follow:

This is a bill in equity for injunctive relief and an accounting for alleged infringement of the patent in suit. The issues are validity and infringement. The court makes the following findings of fact and conclusions of law:

### Findings of Fact.

1. Plaintiff, Blaw-Knox Company, is a New Jersey corporation, having a place of business at Blawnox, Allegheny county, Pa. Defendant, Koppel Industrial Car & Equipment Company, is a Pennsylvania corporation having a regular and established place of business at Koppel, Beaver county, Pa.

2. Christian Brynoldt applied May 14, 1918, for, and received March 25, 1919, from the Commissioner of Patents of the United States, a patent No. 1,298,450 for apparatus for constructing concrete walls, which is the patent in suit. The plaintiff is owner thereof by assignment.

3. It is stated in the patent in suit: "This invention relates to the process and apparatus for constructing concrete walls and more particularly that class of walls required for canal locks, retaining walls, and the like."

4. It is stated in the patent in suit that its principal objects are "the provision of means whereby a single wall form may be used to construct a wall of greater length than the form with a minimum of apparatus and manipulation; the provision of an apparatus wherein a wall form may be supported without the customary use of tie rods, or in the case of a very high wall with a minimum number of tie rods; the provision of a mold form wherein the strain upon the supports and the tie rods is equalized throughout the length of the mold form; the provision of improved methods of supporting the bulkheads closing the ends of the forms whereby the form may be detached from the finished wall section and moved to a new position with a minimum of labor and time consumed in its operation; the provision of efficient means for adjusting the mold forms with respect to the supports, and such other objects as may hereinafter appear."

5. It is stated in the patent in suit:

"The wall forms 7 and 8 are supported in any desired position by means of a supporting frame or truss E which consists of a series of connected truss sections each comprising a horizontal truss 24 and a pair of substantially vertical trusses 25 and 26 rigidly connected to the horizontal truss 24. All of the truss members are of sufficient rigidity to support the wall forms in operative position without perceptible deflection when under full load, but in the case of extremely high walls it is desirable to support the lower ends of the truss members 25 and 26 against lateral displacement by means of suitable tie rods 27 which connect the lower ends of the trusses 25 and 26.

"When tie rods are used to support the lower ends of the trusses 25 and 26, the said trusses are constructed so that they will resist the load imposed upon them between the tie rods and the upper truss 24 without perceptible deflection, but in the case of extremely high walls and where the concrete is formed rapidly, it is sometimes not possible to prevent a certain degree of deflection under full load. Such deflection is compensated for by springing in the more or less flexible wall forms 7 and 8, as indicated in dotted lines in Fig. 1, so that when the load is imposed the wall forms 7 and 8 will assume a true plane by reason of the outward deflection of the trusses 25 and 26. It sometimes takes several days to fill up a form, in which event the concrete formed in one day becomes set over night. Where such is the case the forms are pressed in slightly by the jackscrews a short distance above the set concrete so that the next portion will cause the forms to be again straightened. This process is repeated after each successive filling, and the result is a straight wall when the filling has been completed."

6. It is stated in the patent in suit: "Heretofore it has been customary to support the wall forms by means of closely spaced tie rods disposed at spaced intervals at various elevations passing through the space between the forms and tying the wall forms together so that they would not be displaced by the concrete. The rods thus placed could not be removed from the concrete after it had become set without the use of numerous expensive pipes or tubes and therefore were left in the wall. In a very long wall this would be a very expensive procedure and therefore it is the object of this invention to do away with a great number of these tie rods and in some cases eliminate them altogether."

7. It is stated in the patent in suit: "It is obvious that many changes may be made in the details of the construction without departing from the spirit of the invention, and the invention is therefore not limited to the specific construction herein illustrated and described."

8. The patent in suit contains nineteen claims. Claims 3, 5, 7, 8, and 19 are in suit. Claims 3 and 5 read as follows:

"3. In a wall mold apparatus, the combination of a pair of side trusses connected adjacent the top so as to constitute a member adapted to straddle the work, a pair of oppositely disposed wall mold sections supported within said member, and means for supporting the lower ends of the side trusses against displacement."

"5. In a wall mold apparatus, the combination of a pair of substantially vertical truss members adapted to lie on opposite sides of the work, means connecting the upper portions of said members to prevent dis-

placement thereof, means adapted to prevent displacement of the lower portions of said members, two oppositely disposed wall mold sections between said truss members, and means for supporting the sections from the said members."

9. The essential features of the patent in suit are as follows: A pair of vertical side trusses; a nonhinging connection across the top of the structure tying the side trusses together in such manner as to prevent rocking; form members inside the U-shaped structure formed of the side trusses and the top member which connects them together; such arrangements of the parts that the concrete loads are transmitted from the form members to the truss members; a minimum number of tie rods connecting the trusses together.

10. In the casting of a concrete wall the foundation is prepared, a form is set thereon, erected, and aligned, and the fluid concrete is poured into the form. Concrete weighs approximately 4,000 pounds per cubic yard, and when, as is often the case, a large quantity of concrete is dumped into the form, it subjects the form to severe pressures and shocks.

11. Prior to the invention of the patent in suit high concrete walls were cast in "lifts." This was the sole type of form used for building high walls or blocks of concrete where large quantities of concrete were involved. When casting in lifts it was the practice to build a form, usually in panels which were fastened together with a great number of tie rods, together with such internal and external bracing as was required. Frequently because of adjacent railroad tracks, other walls, structures, or excavations, it was impossible to use external bracing. In such cases interior bracing had to be put in, the braces being removed as the concrete reached them resulting in most cases in an unsatisfactory wall. In this method of casting the form was filled with concrete, then, after waiting for the concrete to harden, the original form was moved up or an additional form built on top of it and another pour made.

12. The cost of building a wall by lifts was quite high. The forms had to be replaced frequently. Extra expense was involved because the surface of the concrete poured at one time had to be cleaned before the next layer of concrete was put on. This entailed the loss of a great amount of time because of the necessity for waiting for the concrete to harden after each pour.

13. Walls cast in lifts were frequently out of line an inch or more and did not pass spe-cifications. A great deal of refinishing was often necessary. There was danger, even though the forms were generally made more or less flexible so as to simplify their removal, that in the removal of the lift forms some of the concrete of the wall would be removed with the form.

14. Walls made by casting in lifts are characterized by having closely spaced tie rods running through them.

15. There are a large number of forces tending to move a form out of alignment and cause misalignment of the wall. The wood forms tend to warp. The dumping of concrete imposes very heavy shocks as does the fluid pressure of the concrete in the form. Wind forces run as high as 100 pounds per square foot. There are in addition a large number of forces which cannot be calculated; for example, those due to slight differences in stiffness of the members and differences in the length of spreader pipes, which are of considerable magnitude and tend to deflect the form.

16. In making molds for forming small concrete walls the normal thing to do is to back the boards up with stiffening timbers for the purpose of preventing bulging, and this was the practice long prior to the patent in suit.

17. In concrete form work it is and always has been essential to support the side walls so they can not move apart or bulge, and supporting them by backing up, and by ties, were both well known prior to the patent in suit.

18. Always in the practice of making wooden forms, to make a good form for holding concrete it has been necessary to back up the wall members with shoring or bracing in order to make it rigid. That is one of the first principles in making a form.

19. Ordinarily this reinforcing was done in wooden forms by the use of timbers such as 2x12 placed edgewise to the mold boards, and stiff enough so that they would not bend between ties.

20. In making up any concrete form for walls of 15 feet height or more, one of the essentials is that the mold wall shall be backed up by rigid nonyielding members.

21. It was old prior to the patent in suit to back up concrete forms with structural steel shapes such as angles. In general construction work, as the strains become greater, it is ordinary practice to substitute trusses for beams where greater loads are required, and this was known long before the patent

in suit. The truss is a well-known substitute for beams, to get greater strength out of a minimum of material.

22. Prior to the patent in suit, where rigid side wall structures were used to make a mold for a concrete wall, it was the common expedient that those two structures should be tied together across the top.

23. Prior to the patent in suit, concrete forms were known in which a rigid member extended across from wall to wall of the mold at the top, being attached to the side walls by bolts or pins.

24. There is no functional difference between a beam and a truss when applied to a concrete wall-mold structure for the purpose of backing it up. Each of them is a rigid member, longitudinally unbending, placed behind the forms to prevent them bulging outward or spreading under the concrete load.

25. A truss is used to carry larger stresses than simple beams. Within the limits of the same amount of materials, trusses can be made more resistant to bending than a beam.

26. Englehardt patent 830,893 relates to apparatus for construction of concrete walls. It discloses two side walls rigidly connected without trusses, but not sufficiently rigid to prevent hinging.

27. Carmody patent 849,885 relates to molding of concrete walls. It discloses a form for casting a wall in short lifts. Tie rods are placed every 8 or 9 inches of height. It has a scaffold which gives some support as a truss to the tie rods.

28. Mann patent 854,098 discloses a block forming machine without trusses. It casts by short lifts.

29. Witthoefft patents 916,083 and 916,-084 are companion patents. The principal object of the inventor was to support a bucket for conveying concrete above the wall. The bucket is supported by a scaffold-like framework. There is no trussing to sustain the form but only to make the scaffolding firm enough to enable a man to stand on it. Patent 916,083 shows no tie across the top of the wall. The companion patent provides an adjustable scaffolding arrangement, which is carried up in sections so that the concrete bucket may be raised. This patent shows a very large number of tie rods. No truss action is developed in the scaffolding of Witthoefft because of the close spacing of the tie rods, there being some 2½ tie rods for each pivot point.

30. Kay patent 940,463 discloses a form braced from the ground by the usual diagonal bracing. His form is not high. There are a large number of tie rods, and the connection across the top of the form is not suitable to prevent hinging of the two form sections. This is also a form for casting in lifts.

31. The principle and structure of plaintiff's and defendant's forms are not found in the prior art.

32. The prior art cited does not anticipate the patent in suit.

33. The use of the invention of the patent in suit results in a great time saving. It was first applied on a wall form for Briar Hill Steel Company in the building of a wall 1,200 feet long, which wall was finished in half the time which would otherwise have been required.

34. By the use of the invention of the patent in suit it is possible to cast walls which it would have been impossible to cast by the old method; for example, walls constructed under water.

35. The use of the invention of the patent in suit results in the production of a superior wall which is cast as a monolith rather than by lifts and is accurate as to alignment.

36. By the use of the invention of the patent in suit the number of tie rods is reduced to a minimum.

37. By the use of the invention of the patent in suit superior large concrete walls may be constructed at a reduced cost by reason of the lesser number of tie rods required and the facility with which the form may be moved.

38. The invention was first applied to the casting of a wall for the Briar Hill Steel Company in the fall of 1917, and the form used on such job is the one illustrated in the patent in suit. Since that time the total amount of business done by plaintiff in the patented form is $633,691. The invention has been used in the casting of walls as high as 84 feet and as thick as 60 feet.

39. Plaintiff's patent has not displaced wooden forms or forms of other kinds for the uses for which defendant's form is adapted. In practically all cases where defendant has offered its forms it has met direct competition with wooden forms.

40. In defendant's form there are wall mold sections consisting of a skin plate to which channels are welded. These wall mold sections are supported by vertical trusses consisting of a latticed assemblage welded together. The wall mold sections are bolted to the inner chord of the truss. The trusses are con-

nected by tie rods, there being one set near the bottom of the form and another set at the throat of the Y-wall. The vertical trusses have large gusset plates at the top and these plates having angular slots cut through them to receive an angle extending longitudinally of the form structure. Such angle forms part of a horizontal truss extending along the top of the form.

41. The two sides of defendant's form were connected across the top by members termed "struts," and referred to, respectively, as "A" struts and "B" struts. The "A" struts are bolted to the gusset plates by 1¼ inch bolts pulled up as tightly as possible. The "B" struts are similarly bolted to intermediate vertical members. The "A" struts and the "B" struts are bolted to an inner trough section which makes the entire top structure a single unit. The top structure acts as a truss for all practical purposes.

42. The top connecting structure is bolted to the vertical truss construction by bolts through the "A" struts which are 3' 2" from the center line, and by bolts through the "B" struts which are 4' 8¼" from the center line. This constitutes a connection which makes hinging impossible.

43. The bolts are so tightly drawn that even the frictional resistance to hinging is very high, this amounting to 30,000 foot pounds for one side of the form alone.

44. The "A" struts alone are so connected to the vertical trusses as to prevent hinging. The ends of the "A" struts rest on the angles which are threaded through the slots in the top gussets. This type of connection offers at each joint a resistance of 23,500 foot pounds. In use, defendant's top structure forms a rigid nonhinging connection with the vertical trusses.

45. Defendant's use of tie rods at the throat of the form follows plaintiff's use of a rod in such location in a similar form for the St. Louis Filtration Plant. The function of this tie rod is to resist the shock peculiar to the dumping of concrete in a form for a wall with an enlarged head.

46. Defendant's form was designed by William Gurtler and A. K. Wetzig. These men had previously been employed by plaintiff on the design of its forms. Mr. Gurtler was not a salaried employee of defendant but worked for it under a special arrangement. He approached the defendant with the idea of getting it to go into the form business.

47. Defendant's form embodies the combination of a pair of side trusses connected adjacent the top so as to constitute a member adapted to straddle the work; it embodies a pair of oppositely disposed wall mold sections supported within such member and it embodies means for supporting the lower ends of the side trusses against displacement; all as required by claims 3 and 7.

48. Defendant's form also embodies means for supporting the wall mold sections from the truss members as required by claim 5.

49. Defendant's structure also comprises a substantially U-shaped inverted truss member as required by claim 8.

50. Defendant's form also embodies means adapted to connect the sections at a plurality of points in the area thereof to prevent relative displacement as required by claim 19.

51. The longer struts B (S-7) never did touch the ends of the longitudinal angles T-46.

52. In the use of defendant's forms sections were assembled and bolted together so that a wall unit 108 feet long was poured.

53. Defendant's form was not designed so that the top cross struts together with the two side members, and without the tension members, would be operative for the purpose for which the form is intended. If the tension members were left out the structure would not be a concrete form, and could not carry the load that would result from filling the form.

54. This is shown by the fact that when one of the lower tie bolts in these forms fails to hold "the form walked away from the other one and the concrete all ran out on the concrete base * * *." And the form separated at the foot about 18 inches, which is as far as the bolt allowed it to do.

55. Defendant's two side frame members are assembled by attaching them together at the top by means of the struts "A" and "B" (S-1 and S-7) connected by one bolt at each end, the bolts being 1¼ inches in diameter and the holes in the struts and side members being 1 5/16 inches in diameter, only one bolt being used at each end of each strut.

56. In moving defendant's form the trough attached to the top struts was picked up and moved first, that part being laid down close to where the form was to be re-set up. At that stage the two side wall members of defendant's form were entirely disconnected, and thereafter each side was moved separately to its position at the next set-up. After the two side forms were positioned separately the trough member was set in and the struts were bolted to the truss plates and side frames.

Then the two sides were individually elevated and separately adjusted by lifting jacks until the form was correctly positioned.

57. The tolerance (i. e., the permissible variation from specified position of the finished concrete wall), in a structure such as that of the Cleveland job, is about ⅛ of an inch at the top of the wall. That is to say, if the top of the wall were more than ⅛ of an inch out of theoretically correct alignment, it would be considered bad work.

58. Prior to the filing of the bill of complaint and within six years thereof defendant supplied forms to be used on the Easterly Sewage Treatment Works project at Cleveland, Ohio. The walls cast in such forms were 16 feet 6 inches high, 8 feet wide at the top, 3 feet 3 inches wide at the bottom, and upwardly of 300 feet long. The walls were Y-shaped in cross section.

59. Defendant infringes each of the claims in suit.

60. Prior to the filing of the bill of complaint defendant was duly notified of its alleged infringement of the patent in suit.

### Conclusions of Law.

1. The patent in suit contains invention new and useful.

2. The patent in suit has not been anticipated by the prior art.

3. The patent in suit is valid.

4. Defendant has infringed the patent in suit.

5. Plaintiff is entitled to injunctive relief and an accounting.

### Opinion.

The patent in suit relates to forms for molding concrete walls, especially large concrete walls such as are required for canal locks. It entered an old and a crowded art. It made an advance therein by the facility with which its unitary form could be moved along the wall, by the elimination of tie rods in small walls, and by a large reduction thereof in large walls, by enabling the construction of a wall as a monolith rather than by lifts, by more ease in procuring alignment by the production of walls more accurate in alignment, and by enabling the construction of walls under water. It has enjoyed a large commercial success. The patent in suit obtained these advances in the art by a unitary form which contains a pair of vertical side trusses, a nonhinging horizontal truss connection across the top of the structure tying rigidly the side trusses together, and four members inside the U-shaped structure formed of the side trusses and the top member which connects them together. The arrangement of the parts is such that the concrete loads are transmitted from the form members to the truss members. No person prior to Brynoldt discovered the combination which produced such satisfactory results in the construction of concrete walls. The defendant in its brief states: "There is no contention on the part of the defendant that Brynoldt did not make an advance over the prior art." The patent in suit contains invention, new and useful. Richmond Screw Anchor Company v. United States, 275 U. S. 331, 338, 48 S. Ct. 194, 72 L. Ed. 303; Voices, Inc., v. Up-To-Date Mfg. Co. (C. C. A. 3) 41 F.(2d) 22; Macomber & Whyte Rope Co. v. Hazard Mfg. Co. (C. C. A. 2) 211 F. 976, and Hartford-Empire Co. v. Hazel-Atlas Glass Co., 59 F.(2d) 399 (C. C. A. 3).

The defendant's structure was designed by employees of defendant formerly in the employ of the plaintiff. The design was evidently copied from the structure of the patent in suit although defendant's structure has some minor differences. The principal difference is that in defendant's structure struts are employed to connect the vertical trusses at the top thereof. The struts in defendant's structure are bolted to an inner trough section so as to make the top structure a single unit and for all practical purposes it is the equivalent of the truss of the patent in suit. Defendant's structure in design and function is substantially the same as the structure and function of the form in the patent in suit.

Let a decree be prepared in accordance with the foregoing findings of fact, conclusions of law and this opinion.

Brown, Critchlow & Flick, of Pittsburgh, Pa. (Jo. Baily Brown and J. R. Langley, both of Pittsburgh, Pa., of counsel), for appellant.

Byrnes, Stebbins, Parmelee & Blenko, of Pittsburgh, Pa. (Clarence P. Byrnes and Walter J. Blenko, both of Pittsburgh, Pa., of counsel), for appellee.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a decree of the District Court for the Western District of Pennsylvania granting an injunction and accounting for alleged infringement of Brynoldt patent, No. 1,298,450, for apparatus for

constructing concrete walls, which patent had been assigned to the appellee, Blaw-Knox Company. The patent states as follows: "This invention relates to the process and apparatus for constructing concrete walls and more particularly that class of walls required for canal locks, retaining walls, and the like, and has for its principal objects; the provision of means whereby a single wall form may be used to construct a wall of greater length than the form with a minimum of apparatus and manipulation; the provision of an apparatus wherein a wall form may be supported without the customary use of tie rods, or in the case of a very high wall with a minimum number of tie rods; the provision of a mold form wherein the strain upon the supports and tie rods is equalized throughout the length of the mold form; the provision of improved methods of supporting the bulkheads closing the ends of the forms whereby the form may be detached from the finished wall section and moved to a new position with a minimum of labor and time consumed in its operation; the provision of efficient means for adjusting the mold forms with respect to the supports, and such other objects as may hereinafter appear."

The claims in suit are as follows:

"3. In a wall mold apparatus, the combination of a pair of side trusses connected adjacent the top so as to constitute a member adapted to straddle the work, a pair of oppositely disposed wall mold sections supported within said member, and means for supporting the lower ends of the side trusses against displacement."

"5. In a wall mold apparatus, the combination of a pair of substantially vertical truss members adapted to lie on opposite sides of the work, means connecting the upper portions of said members to prevent displacement thereof, means adapted to prevent displacement of the lower portions of said members, two oppositely disposed wall mold sections between said truss members, and means for supporting the sections from the said members."

"7. In a wall mold apparatus, the combination of a pair of upwardly extending truss members adapted to lie on opposite sides of the work, means connecting the upper portions of said members to prevent displacement thereof, means adapted to prevent displacement of the lower portions of said members, and two oppositely disposed wall mold sections between the truss members.

"8. In a wall mold apparatus, the combination of a substantially U-shaped inverted truss member adapted to straddle the work, and two oppositely disposed wall mold sections supported within the member."

"19. In a wall mold apparatus, the combination of upright truss members, a pair of oppositely disposed wall mold sections supported therein, and means adapted to connect the sections at a plurality of points ,in the area thereof to prevent relative displacement."

The appellant's form of apparatus was designed by two former employees of the appellee.

The court below found as a fact and it is not disputed that, prior to the invention disclosed in the patent, the construction of high concrete walls in heavy massive work, such as that to which the invention relates, was accomplished by casting in lifts.

It is also not disputed that the U-shaped inverted truss member adapted to straddle the work was new in the art. The appellant concedes this in its brief, from which we quote: "All of the figures upon which plaintiff bases its argument of commercial success are based upon the use of forms having the rigid integral U-shaped movable trussed housings, which defendant has not denied may be a patentable invention, and which it has scrupulously respected, see R. 133–4."

The court found that the only practical distinction between the appellee's inverted U-shaped rigid construction and that of the appellant was in the use by the latter of struts bolted to an inner trough section so as to make the top structure a single unit; and that the struts so used were, for all practical purposes, the equivalent of the truss construction of the patent in suit.

We find no error in the conclusion of the court below that the appellant's construction comes within the invention of the patent as a form "having the rigid integral U-shaped movable trussed housings." That conclusion is based inter alia upon the court's findings of fact Nos. 41 to 44 and 47 to 50.

After careful examination and consideration of the entire record and the briefs in the case, we find that the court below, in its findings of fact, conclusions of law, and opinion, has thoroughly and with painstaking care discussed the invention of the patent in suit and the prior art, and has compared the appellant's structure with that of the patent. A further discussion of the issues in the case

would be a needless repetition of what has been, in our view, well and conclusively stated by the trial court. We find no error in the findings of fact, conclusions of law, and the opinion of the learned judge, set out above.

Decree affirmed.